IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ISIKEL, LLC** | § | |
|     **Plaintiff** | § | |
| | § | |
| | § | |
| **V.** | § | C.A. NO. 4:19-cv-04439 |
| | § | |
| | § | |
| | § | |
| **JACKSBOSTON, LLC, COURTLAND** | § | |
| **RUSH, AND KEEGAN RUSH** | § | |
|     **Defendants** | § | |

**DEFENDANTS' ANSWER
TO PLAINTIFF'S ORIGINAL PETITION, WITH COUNTERCLAIMS**

COMES NOW, Defendants Jacksboston, LLC, Courtland Rush, and Keegan Rush (collectively, "Defendants"), and files this their First Amended Answer to Plaintiff's Complaint and Original Counterclaim. Defendants respectfully shows as follows:

**DEFENDANTS ANSWER TO THE ORIGINAL PETITION**

**I.
DISCOVERY**

1. Responding to Paragraph 1, Defendants are not required to admit or deny any legal conclusion; however, to the extent necessary, all averments in Paragraph 1, implicit or explicit, are denied.

**II.
PARTIES AND PROCESS**

2. Responding to Paragraph 2, on information and belief, admitted.

3. Responding to Paragraph 3, for Jacksboston, LLC admitted.

4. Responding to Paragraph 4, for Courtland Rush admitted.

5. Responding to Paragraph 5, for Keegan Rush admitted.

## III.
## JURISDICTION

6. Responding to the first sentence of Paragraph 6, Defendants are not required to admit or deny any legal conclusion; however, to the extent necessary, all averments in Paragraph 6, implicit or explicit, are denied.

## IV.
## VENUE

7. Responding to the first sentence of Paragraph 7, Defendants are not required to admit or deny any legal conclusion; however, to the extent necessary, all averments in Paragraph 7, implicit or explicit, are denied.

## V.
## FACTUAL BACKGROUND

8. Responding to the first sentence of Paragraph 8, Defendants lack information to answer what Isikel, LLC's business encompasses. Responding to the second sentence of Paragraph 8, Jacksboston, LLC admits that it is a North Carolina entity. Responding to the third sentence of Paragraph 8, Courtland Rush and Keegan Rush admit that they are the owners of Jacksboston, LLC, but otherwise deny all other averments in this sentence of Paragraph 8.

9. Responding to the first sentence of Paragraph 9, Defendants admit that Jacksboston, LLC, did business with Plaintiff, Defendants admit that the terms of the agreement speak for the themselves. All other averments in Paragraph 9, either implicit or explicit, are denied.

10. Responding to the first sentence of Paragraph 10, Defendants admit that Jacksboston, LLC, entered into an agreement with Plaintiffs. Defendants admit that the terms of the agreement speak for themselves. All other averments in Paragraph 10, either implicit or explicit, are denied.

11. Denied.

12. Denied.

13. Responding to the first sentence of Paragraph 13, Defendants lack information to either admit or deny. Responding to the second sentence of Paragraph 13, denied.

14. Responding to the first sentence of Paragraph 14, denied. Responding to the second sentence of Paragraph 14, Defendants lack information to either admit or deny.

15. Responding to the first sentence of Paragraph 15, Defendants deny they owe Plaintiff any debt. Responding to the second sentence of Paragraph 15, Defendants admit to receiving a demand letter. Responding to the third sentence of Paragraph 15, denied.

## VI.
## CAUSES OF ACTION

Count 1: Alleged Breach of Contact*[sic]*

16. Responding to Paragraph 16, Defendants reassert their responses to the foregoing paragraphs as if fully set forth herein.

17. Respond to Paragraph 17, Defendants admit that Jacksboston, LLC, entered an agreement with Plaintiff, and all other averments in this sentence and in the second sentence of Paragraph 17, implicit or explicit, are denied.

18. Denied.

19. Denied.

Count 2: Alleged Fraud

20. Responding to Paragraph 20, Defendants reassert their responses to the foregoing paragraphs as if fully set forth herein.

21. Denied.

22. Denied.

## VII.
## TEX. R. CIV. P. 47 STATEMENT

23. Responding to Paragraph 23, Defendants are not required to admit or deny any legal conclusion; however, to the extent necessary, all averments in Paragraph 6, implicit or explicit, are denied.

## VIII.
## CONDITIONS PRECEDENT

24. Responding the Paragraph 24, not all conditions precedent have been performed. All other averments in Paragraph 24, either implicit or explicit, are denied.

## IX.
## ATTORNEY'S FEES

25. Responding to Paragraph 25, Defendants are not required to admit or deny any legal conclusion; however, to the extent necessary, all averments in Paragraph 25, implicit or explicit, are denied.

## X.
## REQUEST FOR DISCLOSURES

26. Responding to Paragraph 26, Defendants are not required to admit or deny any legal conclusion; however, to the extent necessary, all averments in Paragraph 25, implicit or explicit, are denied.

## XI.
## CONCLUSION

27. While Defendant is not required to respond to Plaintiff's Prayer, to the extent the Prayer asserts factual allegations, Defendants deny each and every allegation therein. Further, Defendants deny that Plaintiff is entitled to any of the relief sought in this lawsuit, and Defendants deny that Plaintiff is entitled to any relief whatsoever.

## **AFFIRMATIVE DEFENSES**

Subject to the foregoing answer, Defendants Jacksboston, LLC, Courtland Rush, and Keegan Rush, in addition thereto, make the following affirmative defenses:

1. Plaintiff failed to state a claim upon which relief may be granted.

2. Defendants have acted in good faith and did not in any way act unlawfully.

3. Plaintiff has suffered no injury as a result of the allegations in their Petition.

4. Additionally and alternatively, Plaintiff has unclean hands or has otherwise engaged in misconduct barring the claims in the Complaint.

5. Additionally and alternatively, Plaintiff's damages, if any, were caused in whole or in part by their own acts or omissions.

6. Additionally and alternatively, Plaintiff's claims are barred due to the doctrine of waiver

7. Additionally and alternatively, Plaintiff's claims are barred by the doctrine of estoppel.

8. Additionally and alternatively, Plaintiff's claims are barred, in whole or in part, by the doctrine of consent.

9. Additionally and alternatively, Plaintiff's claims are barred, in whole or in part, by the doctrine of justification.

10. Additionally and alternatively, Plaintiff's claims are barred, in whole or in part, by the doctrine of privilege.

11. Additionally and alternatively, Plaintiff has failed to mitigate its damages, if any.

12. Defendants assert all the provisions of Chapter 41 of the Texas Civil Practice & Remedies Code and all its appropriate subsections which limit the amount of any exemplary damages that may be awarded.

13. Defendants' Courtland Rush and Keegan Rush are not liable in their individual capacity and at all times were acting in the capacity as Managers of Jacksboston LLC. Courtland Rush and Keegan Rush are not liable in the capacity in which they have been sued.

14. Additionally, and alternatively, Plaintiff is not entitled to attorney's fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code.

15. Defendants reserve their right to amend their Answer and Affirmative Defenses as may be applicable during the course of this litigation.

## COUNTERCLAIMS

Defendant Jacksboston, LLC (hereafter, "Jacksboston" or "Counterclaim Plaintiff") hereby brings its Counterclaims against Plaintiff and alleges as follows:

## PARTIES

1. Counterclaim Plaintiff Jacksboston, LLC, is a North Carolina limited liability company with its principal place of business in Clayton, North Carolina. Jacksboston, LLC's members are all citizens of North Carolina. No member of Jacksboston, LLC is a citizen of Texas.

2. On information and belief, Counterclaim Defendant Isikel, LLC (hereafter, "Isikel" or "Counterclaim Defendant") is a Texas limited liability company and maintains a place of business at 26618 Prairie Street, Spring, Texas 77373.

## JURSIDICTION AND VENUE

3. This Counterclaim involve trademark infringement under the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1051, *et seq.* by Isikel. It also involves breach of an Asset Purchase Contract and breach of an Equipment Lease by Isikel.

4. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 116(a), 1121, and 28 U.S.C. §§ 1331 and 1338.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1332 because (a) the parties are citizens of different states and (b) the amount in controversy exceeds $75,000.

6. For the purposes of this Answer and Counterclaims, venue is proper in this judicial district because Counterclaim Defendant Isikel is a Texas limited liability company and has voluntarily consented to jurisdiction in this district by filing this lawsuit in the Court of Harris County Texas. Counterclaim Plaintiff recently removed this case from the Court in Harris County Texas to the United States District Court for the Southern District of Texas.

7. This Court has personal jurisdiction over Isikel because it is a Texas limited liability company and has voluntarily consented to jurisdiction in this district by filing this lawsuit in the Court of Harris County Texas.

## BACKGROUND

8. Jacksboston owns the Piper Lou® name and related trademark (the "Mark"), tradename, as well as the goodwill associated with that Mark. A true and correct copy of United States Patent and Trademark Office trademark registration for the Mark is attached here as **Exhibit A**.

9. The classes of goods for which the Piper Lou® Mark was registered at the United States Patent and Trademark Office include hats, T-shirts, and drinkware. Jacksboston has been

engaged in commercial activities including promoting, advertising, and selling merchandise bearing the Mark throughout the United States since August 1, 2016.

10. Jacksboston has, for example, promoted, advertised, marketed, and sold goods bearing the Piper Lou® Mark on Internet platforms including the Piper Lou® website (www.piperloucollection.com), as well as Facebook (facebook.com/piperloucollection/), and Shopify.

11. In July of 2017, Jacksboston and Isikel entered into an agreement, the "Asset Purchase Contract," by which Isikel, the "Buyer" agreed to purchase certain equipment from Jacksboston, the "Seller" for the purchase price of $400,000.00. Isikel agreed in the Asset Purchase Contract to make an initial payment of $40,000.00 and to finance the balance of the purchase price from Jacksboston.

12. Two M&R M-Link Digital Printers are the equipment purchased in the Asset Purchase Contract. Isikel stopped making the payments, "the Equipment Lease," to Jacksboston for the full payoff of the Asset Purchase Contract, leaving $87,000.00 remaining to be paid by Isikel to Jacksboston.

13. Jacksboston and Isikel also entered into an "Exclusivity Agreement" ancillary to the Asset Purchase Contract. In this Agreement, Jacksboston, the "Seller" agreed to use Isikel, the "Buyer," for all current and future print business and would ship between 10,000 and 12,000 items to Buyer from Blue Pack Marketing, Jacksboston, LLC, Piper Lou, Piper Lou Collection and/or any other Blue Pack Marketing brands combined monthly. Jacksboston was performing under the agreement. The Agreement was exclusive in that Seller would exclusively utilize Buyer for all such orders, especially to include all apparel and tumbler business.

14. Isikel failed to uphold its obligations under the Exclusivity Agreement by, for example and without limitation, routinely and regularly failing to fill purchase orders from Jacksboston in a timely manner, and so therefore requiring Jacksboston to cancel or reduce sales orders.

15. Under the Exclusivity Agreement, Isikel had a limited license to only produce licensed products bearing the Piper Lou® Mark (or any other trademark owned by Jacksboston) as ordered and/or authorized by Jacksboston.

16. Without Jacksboston's knowledge, consent, or authorization, and clearly not in connection with any Jacksboston purchase order, Isikel produced a large number of hats bearing the Piper Lou® Mark, and, it is believed, to have 60,000-70,000 more such hats in its inventory.

17. Isikel does not have Jacksboston's authorization, consent, or permission to sell, assign, transfer or otherwise dispose of the hats, or any other merchandise that bears the Piper Lou® Mark, or any other trademark owned by Jacksboston.

### I.    COUNTERCLAIM 1: Breach of Contract

18. Jacksboston re-allege the previous paragraphs, as set forth in their entirety, and incorporates each of them separately and severally herein for all purposes.

19. Jacksboston and Isikel entered into an Asset Purchase Contract and Exclusivity Agreement.

20. The Asset Purchase Contract and Exclusivity Agreement constitute lawful and binding contracts.

21. Jacksboston performed all of its obligations under the Asset Purchase Contract and Exclusivity Agreement.

22. As described above, Isikel's failure to pay the Equipment Lease is a breach of the Asset Purchase Contract.

23. Isikel's conduct, as described above, is a breach of the Exclusivity Agreement.

24. By virtue of the foregoing acts, Isikel has breached both the Asset Purchase Contract and the Exclusivity Agreement.

25. Isikel's breaches damaged Jacksboston. Jacksboston is entitled to damages in an amount to be proven at trial including, but not limited to, lost profits from orders not filed and/or not timely filled by Isikel and, alternatively and cumulatively profits on all orders Isikel filled using products bearing the Mark without consent of Jacksboston

26. Jacksboston is additionally entitled to its reasonable attorneys' fees and court costs as authorized by Chapter 38 of the Texas Civil Practice and Remedies Code.

## II.   COUNTERCLAIM 2: Trademark Infringement

27. Defendants re-allege the previous paragraphs, as set forth in their entirety, and incorporates each of them separately and severally herein for all purposes.

28. Jacksboston has registered its Mark with the United States Patent and Trademark Office.

29. Since registering its Mark, Jacksboston has extensively advertised is Mark in connection with commercial sales, marketing, and promotion of its products throughout the United States.

30. Since registering its Mark, Jacksboston consistently polices its Mark.

31. Isikel had no right to use Jacksboston's Mark without Jacksboston's consent.

32. Notwithstanding demands by Jacksboston for Counterclaim Defendant to cease use of the Mark in the operation of their competing business in violation of the Lanham Act, Counterclaim Defendants continue to do so.

33. Isikel's act were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive as to the origin of products bearing or associated with the Mark. For example, as illustrated in **Exhibits B and C** filed with this Answer and Counterclaims, Isikel has shipped products bearing the Mark to customers in packaging stating that the origin of the goods was Sandy Cheeks Apparel.

34. Isikel's shipment of goods, including hats, bearing the Mark, consists of use in commerce and because the goods crossed multiple state lines, it also consists of interstate commerce.

35. Isikel's use in commerce of the Mark without the consent of Jacksboston is causing confusion and deceiving the public into believing, contrary to fact, that the unauthorized activities of Isikel are licensed, authorized, sponsored, or otherwise approved by Jacksboston.

36. Jacksboston has suffered and is continuing to suffer harm and has incurred and is continuing to incur monetary damage caused by Isikel's activities. The damage from Isikel's activities are considerable and continuing.

37. By virtue of the foregoing acts and conduct, Jacksboston is entitled to, among other things, an award of actual damages, enhanced damages, reasonable attorney's fees, and costs under Section 35 of the Lanham Act, 15 U.S.C. § 1117, together with prejudgment and post-judgment interest.

### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants Jacksboston, LLC, Courtland Rush, and Keegan Rush respectfully request that the Court dismiss with prejudice the claims against them, and that Plaintiff takes nothing by its claims. Additionally, Counterclaim Plaintiff Jacksboston, LLC respectfully prays for a judgement under any theory or cause of action alleged in its counterclaims and proved as follows:

- A) Judgment for Direct Damages;
- B) Pre-Judgment Interest and Post-Judgment Interest as allowed by law or contract;
- C) Exemplary damages;
- D) Counterclaim Defendants profits and Counterclaim Plaintiff's damages pursuant to 15 U.S.C. § 1117(a);
- E) Reasonable and necessary attorney's fees pursuant to Texas State law and 15 U.S.C. § 1117(a):
- F) Injunctive relief pursuant to 15 U.S.C. § 1116(a)
- G) Costs of court; and
- H) Such other and further relief, both at law and in equity, to which it may show itself to be justified.

DATED: December 2, 2019.

          Respectfully submitted,

          **HOOVER SLOVACEK LLP**

By:   */s/ Courtney E. Palm*
        Courtney E. Palm
        SDOT No. 36917
        State Bar No. 24041641
        T. Michael Ballases
        SDOT No. 629795
        State Bar No. 24036179
        5051 Westheimer, Suite 1200
        Houston, Texas 77056
        Telephone: (713) 977-8686
        Facsimile: (713) 977-5395
        palm@hooverslovacek.com
        ballases@hooverslovacek.com

**OF COUNSEL:**

**OFFIT KURMAN, P.A.**
Gregory Grissett
Michael Hogan
Lynn M. Terrebonne
1801 Market Street, Suite 2300
Philadelphia, Pennsylvania 19103
Telephone: (267) 388-1332
ggrissett@offitkurman.com
michael.hogan@offitkurman.com
lynn.terrebonne@offitkurman.com

**ATTORNEY FOR DEFENDANTS, JACKSBOSTON, LLC, COURTLAND RUSH, AND KEEGAN RUSH**

## **CERTIFICATE OF SERVICE**

 I HEREBY CERTIFY that on this the 2nd day of December, 2019, a true and correct copy of the foregoing document was served on all counsel and parties in this matter by the manner stated below:

**VIA E-FILING SERVICE**
Carter H. Thompson
4807 Spicewood Springs Road
Bldg. 2, Ste. 100
Austin, Texas 78759
thompson@carterthompsonlaw.com

               */s/ Courtney E. Palm*
               Courtney E. Palm